UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22918

LOS ANGELES JEWELRY PRODUCTION, INC, and WONDERFUL MERCHANDISE GROUP d/b/a JEWELERETTE & CO.

    Plaintiffs,

v.

PALACIO JEWELERS, LLC, SAKER M. SHALHOUT, and CAROLINA HUSSEIN aka CAROLINA JOSE,

    Defendants.

_____/

## COMPLAINT

Plaintiffs, Los Angeles Jewelry Production, Inc. ("LAJ"), and Wonderful Merchandise Group d/b/a Jewelerette & Co. ("Jewelerette") by and through the undersigned counsel, sue Defendants, Palacio Jewelers, LLC ("Palacio"), Saker M. Shalhout ("Shalhout"), and Carolina Hussein aka Carolina Jose ("Hussein") (collectively, "Defendants"), and hereby allege:

### Parties

1. LAJ is and at all times mentioned herein was a corporation organized and existing under the laws of the state of California, with its principal place of business in the County of Los Angeles, California.

2. Jewelerette is and at all times mentioned herein was a corporation organized and existing under the laws of the state of California, with its principal place of business in the County of Los Angeles, California.

3. Palacio is and at all times mentioned herein was a corporation organized and existing under the laws of the Virgin Islands, with its principal place of business in St. Thomas, Virgin Islands.

4. Shalhout is an individual over the age of 18, at all relevant times was a resident of the Virgin Islands, and is otherwise *sui juris*.

5. Hussein (aka Carolina Jose) is an individual over the age of 18, at all relevant times was a resident of the Virgin Islands, and is otherwise sui juris.

6. Shalhout and Hussein have a romantic relationship, living as common-law husband and wife.

7. Upon information and belief, Shalhout and Hussein own and/or operate Palacio. Hussein is the registered agent for Palacio.

## Jurisdiction and Venue

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C § 1332(a)(1), as the claims in controversy exceed the sum of $75,000 and are between citizens of different states.

9. Defendants Shalhout and Hussein are subject to the personal jurisdiction of this Court inasmuch as they are both citizens and residents of a

territory of the United States.

10. All of the Defendants are subject to Florida statutory liability pursuant to Section 48.193(1), Florida Statutes, because the Defendants committed tortious acts within Florida, and caused injury to persons in Florida, as set forth more fully in this Complaint.

11. While committing tortious acts against the Plaintiffs, Defendants Shalhout and Hussein transmitted telephonic, electronic, and written communications into Florida, and the causes of action brought against Defendants arise from those communications, as set forth more fully in this Complaint.

12. The Southern District of Florida Venue is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(a)(2), as the causes of action alleged herein accrued in Miami-Dade County, Florida.

13. To the extent any events occurred outside of the state of Florida, these actions were the continuation of a tort transitory in nature originally arising in Miami-Dade, Florida, were the direct result of wire communications being sent into Florida, or had the most significant impact in Florida.

14. In addition, the Central District of California could be an appropriate venue, as the Plaintiffs are located in California, the subject contracts were issued from and delivered to California, and the subject contracts contain venue provision clauses selecting California as an appropriate venue. However, the Defendants were

3

not physically located in the state of California and not all of the Defendants are bound by the terms of the contracts; counsel for the Defendants has advised an intent to oppose, on jurisdictional grounds, any action filed in any court in California.

15. All conditions precedent to maintaining this action, if any, have been performed, waived, or excused.

## Introduction

16. This matter arises out of Defendants' scheme to obtain property from Plaintiffs by false and fraudulent pretenses, representations, and promises or willful misrepresentations of a future act.

17. LAJ has been in the jewelry business since the 1980s and is a member of the leading jewelry associations in the world – The American Gem Trade Association (AGTA), the Gemological Institute of America (GIA), and The Jewelers Board of Trade (JBT).

18. Jewelerette was established in 2012 as a wholesale and retail store for high-end jewelry.

19. Shalhout and Hussein have, separately and together, been involved in several jewelry-related and financial schemes and crimes spanning more than a decade.[1]

---

[1] http://www.vipd.gov.vi/public_interest/Press_Releases/Show_Press_Release/10-07-

## The Jewelers International Showcase

20.     The Jewelers International Showcase ("JIS") is the largest jewelry trade show in the Americas, holding two annual conventions at the Miami Convention Center in Miami Beach, Florida: JIS Fall and JIS Spring.[2]

21.     The JIS conventions draw together a large variety of jewelry manufacturers, wholesalers, exhibitors, vendors, and buyers within the jewelry industry from all over the world on an annual and semi-annual basis to build relationships with both new and repeat customers. The JIS conventions generally draw at least 500 different exhibitors for every show.

22.     It is standard in the wholesale jewelry industry for the transactions and

---

08/Police_Continue_to_Crack_Down_on_Illegal_Cash_for_Gold_Business.aspx ("Saker Shalhout, 33 and 26-year-old Carolina Hussein were arrested after members of the VIPD Intelligence Unit, Criminal Investigation Bureau and VI Lottery Enforcement Officers conducted a sting operation at H&S Outlet"); www.justice.gov/archive/usao/vi/pressreleases/20110331a.pdf ("[A] federal jury today found Saker M. Shalhout guilty of conspiracy to commit wire fraud and 42 counts of wire fraud"); https://stthomassource.com/content/2012/01/05/st-thomas-grocers-sentenced-44-months-money-laundering/ (Salhout sentenced to 44 months in federal prison for above-mentioned fraud)

[2] At certain points relevant to the events in the instant dispute, the shows had previously been held in January and called the "JIS Miami Beach Show," as well as the "JIS October Show" and the "JIS March Show," though the shows themselves have always been substantively the same. The rebranding of the shows to "JIS Fall" and "JIS Spring" have no bearing on the claims raised in this complaint, and for purposes of consistency, the shows will exclusively be referred to by their current names.

sale of jewelry to be made over several payments and over the course of several months. As advertised on JIS's website, buyers can choose to take immediate delivery of merchandise from the show or write orders for later shipment. JIS markets itself as "the industry's leading cash-and-carry event."

23. In order to attend a JIS convention, jewelers must register in advance. ID tags are issued and required in order to gain entry to the event location.

### The Business Relationship Between the Parties

24. Plaintiffs met Defendants at the 2015 JIS Fall convention in Miami.

25. At that convention, LAJ and Palacio established a business relationship and agreed to conduct business via the sale of jewelry, gods, and merchandise on a continuing basis.

26. As inducement for LAJ to enter into this continuing business arrangement, Shalhout personally signed a Continuing Personal Guaranty ("Guaranty"), unconditionally guaranteeing Palacio's full performance. A copy of the Guaranty is attached as Exhibit **"A."**

27. At the 2015 JIS Fall convention, LAJ and Defendants entered a Consignment Agreement ("2015 Agreement") dated October 17, 2015. A copy of the 2015 Agreement is attached as Exhibit **"B."**

28. The 2015 Agreement identifies Palacio as the buyer of the jewelry from LAJ, and Shalhout (misspelled Shatour on the Agreement) as the Owner of Palacio.

29. Shalhout executed the 2015 Agreement on behalf of Palacio.

30. Pursuant to the terms of the Agreement, Shalhout agreed to the following:

> (1) all [] item(s) shall remain the property of LAJ until you obtain its consent otherwise at which time you shall fully pay for the amount listed for the item(s) and herein;
>
> (2) until the item(s) is received back by LAJ or paid for in full, you personally guarantee and are fully responsible for the item(s) and the value listed herein in case of any and all theft, loss, damage and/or other disposition of the item(s);
>
> (3) you shall return the item(s) upon LAJ's demand.

31. In other words, Palacio agreed to sell jewelry that at all times was the property of LAJ until LAJ consented otherwise or was paid in full for the jewelry.

32. Pursuant to the 2015 Agreement, Palacio bought a total of $17,358.75 worth of jewelries from LAJ. Shalhout signed, received, and paid for the jewelries by issuing two checks, the first dated October 17, 2015 for $7,358.75 and the second dated November 30, 2015 for $10,000.

33. On January 21, 2018, at the 2018 JIS Spring show, Shalhout again visited LAJ's convention booth and purchased $23,163.95 worth of jewelries, promising to send a check at the end of January 2018. Shalhout issued three checks,

7

the first dated February 28, 2018 for $7,500, the second on March 31, 2018 for $7,500, and the third on April 30, 2018 for $8,163.

34.　At the 2018 JIS Spring show, on January 21, 2018, Shalhout again executed a Consignment Agreement on behalf of Palacio (the "2018 Agreement"). A copy of the 2018 Agreement is attached as Exhibit "**C.**"

35.　The terms and conditions of the 2018 Agreement are identical to the terms and conditions of the 2015 Agreement, including the provisions quoted in Paragraph 30, supra.

36.　At the 2019 JIS Spring show, on January 19, 2019, Palacio and Shalhout again visited the LAJ booth and purchased:

   a) $36,894 in jewelry, with three checks (March 1, 2019 for $15,000, April 1, 2019 for $10,000, and May 1, 2019 for $11,890).

   b) $48,000 with three checks (February 28, 2019 for $16,000, March 31, 2019 for $16,000, and April 30, 2019 for $16,000)

37.　At the 2019 JIS Spring show, on January 19, 2019, Shalhout again executed a Consignment Agreement on behalf of Palacio (the "2019 Agreement"). A copy of the 2019 Agreement is attached as Exhibit "**C.**"

38.　The terms and conditions of the 2019 Agreement are identical to the terms and conditions of the 2015 Agreement, including the provisions quoted in Paragraph 30, supra.

39. At the 2019 JIS Spring show, Palacio and Shalhout began transacting business with Jewelerette, which sells higher-end inventory.

40. Pursuant to an April 2019 agreement, Jewelerette began shipping Palacio jewelries worth $217,633.

41. On April 19, 2019, Shalhout executed a Consignment Agreement on behalf of Palacio (the "Jewelerette Agreement"). A copy of the Jewelerette Agreement is attached as Exhibit "**D.**"

42. The terms and conditions of the Jewelerette are identical to the terms and conditions of the 2015 Agreement, including the provisions quoted in Paragraph 30, supra. (With "Jewelerette" replacing "LAJ".)

43. In 2018, Palacio ordered $153,273.75 of inventory from LAJ.

44. In return for the $153,273.75 of inventory, Palacio made $107,776 in payments, leaving a balance of $45,497.75

45. In 2019, Palacio ordered $1,174,626.18 of inventory from LAJ.

46. In return for the $1,174,626.18, Palacio paid LAJ $464,385.25 and returned $112,992 in merchandise (NSF check in December 2019 for $35,000). YEAR END BALANCE with LAJ - $632,248.93.

47. In total, Palacio owes an outstanding balance of $702,909.68 to LAJ in payment or return of merchandise.

48. Over the course of 2019 and 2020, Palacio ordered $2,211,951 of

inventory from Jewelerette.

49. In return for the $2,211,951 of inventory, Palacio made $981,500 in payments and returned $479,132 in merchandise, leaving a balance of $751,319.

50. In total, Palacio owes an outstanding balance of $751,319 to Jewelerette in payment or return of merchandise.

51. During the course of their relationship going back to 2015, Palacio or Shalhout never notified or advised LAJ or Jewelerette of any issues with the merchandise received, challenge the accuracy of the invoices, or the authenticity or quality of the merchandise.

52. On the contrary, orders continued from Palacio and Shalhout unabated for five years and payments were made on a continuous basis along with returned item credits, without complaint or issue.

53. Throughout the entire business relationship going back to 2015, spanning all the transactions between the parties, LAJ and Jewelerette, by and through their representatives, remained in constant communication with Shalhout through phone calls, text messaging, Viber and WhatsApp messages.

54. Upon information and belief, the phone used by Defendants to communicate with Plaintiffs and/or their representatives belonged to Hussein.

55. Jewelerette's last shipment of merchandise to Palacio was in March 2020.

56. LAJ's last shipment of merchandise to Palacio was in March 2020.

57. Plaintiffs began to grow concerned over Palacio's failure to pay for the merchandise it had received.

58. Plaintiffs sought payment and/or return of merchandise, but their calls and emails to Defendants were ignored.

### Visit to Virgin Island Store and Palacio's Demand

59. Because Defendants were ignoring communication attempts from the Plaintiffs, and because the Defendants owed nearly $1.5 million in either commission or return of merchandise, two representatives on behalf of Plaintiffs flew to the Virgin Islands to visit the Palacio store owned and operated by Shalhout and Hussein in July of 2020.

60. During this visit to the store, LAJ and Jewelerette discovered for the first time that Shalhout, Palacio, and Hussein changed out the tags of the merchandise, in violation of the Agreements.

61. During their visit, LAJ and Jewelerette were able to recover LAJ merchandise worth $45,625.

62. During their visit, LAJ and Jewelerette were able to recover Jewelerette merchandise worth $241,263.

63. By letter dated August 4, 2020, LAJ advised Palacio and Shalhout that it had credited Palacio $45,625 for the merchandise recovered. The letter also

advised that LAJ was aware that "you have taken out most of LAJ's tags" in breach of the agreement. LAJ reminded Palacio that "these jewelries were sent … on a memo basis and the tags should not be altered or modified in any manner" and reminded Palacio of its balance of $717,909.68.

### Defendants' Defamatory Scheme

64. Even after being caught red-handed and confronted with demand for either payment or return of the merchandise, the Defendants refused to comply with their obligations.

65. In response, to the demand, the Defendants fabricated a defamatory narrative that the Plaintiffs had sent Palacio fake diamonds in an attempt to avoid payment obligations.

66. By letter dated September 23, 2020, Palacio informed Plaintiffs that it would not be reimbursing Plaintiffs for their merchandise, which Palacio falsely claimed was "lab-grown, synthetic, and manufactured."

67. In the same letter, Palacio absurdly claimed that Plaintiffs somehow owed Palacio $1,595,496.93.

68. Of note, Palacio has a certified Gemological Institute of America ("GIA") person in his employ inspect all merchandise as it comes into his store who is charged with reporting any alleged synthetic merchandise immediately and before the product is offered for sale to customers. Throughout their several years-long

business relationship, never once did Palacio indicate to LAJ or Jewelerette that there was a suspected problem with the authenticity of merchandise until after demand was made and the Defendants concocted their false defamatory narrative.

69. And it has to be noted that Palacio employs a GIA person in his store who always inspect the merchandise coming from California. Palacio has so much time to report such fake merchandise if true at all. But as we know now, Palacio made such claim of LAJ and Jewelerette selling fake to escape paying for the merchandise.

70. Defendants never attempted to return what it claimed was synthetic merchandise; to the contrary, they continued to sell it in its store.

71. LAJ and Jewelerette's merchandise is clearly still on display at Palacio's store and nearly 70-80% of the merchandise offered in the Palacio store is from LAJ and Jewelerette.

72. To be sure, it was only after LAJ and Jewelerette made the trip to the Virgin Islands to physically confront the Defendants about the outstanding payment or return of the merchandise that Defendants began promoting the slanderous and false narrative regarding the authenticity and quality of the merchandise as a supposed defense for Palacio's failure to honor its obligations, all while Defendants refuse to return and continue to prominently display and sell the merchandise falsely claimed to be synthetic.

73. Not only did the Defendants make these outrageous and non-sensical

claims directly to the Plaintiffs, but also began to spread this knowing lie about the Plaintiffs' products at other JIS Conventions while in Miami, Florida.

74. The false and slanderous statements about the quality of Plaintiffs' merchandise has been made by the Defendants to important business contacts for the Plaintiffs, including regular buyers and vendors at the JIS Convention, causing harm to Plaintiffs' businesses.

75. Plaintiffs have exhausted all efforts in their attempt to recoup their losses incurred by Palacio's willful breaches of their Agreements and their refusal to reimburse Plaintiffs or return their merchandise.

76. As a result of Defendants' conduct, Plaintiffs have been required to retain undersigned counsel and are obligated to compensate undersigned counsel for the reasonable costs of services and expenses related to the litigation.

## COUNT I – Breach of Contract
### (against Palacio)

77. Plaintiffs reassert and reallege paragraphs 1 through 74 as though fully set forth herein.

78. The 2018 Agreement, the 2019 Agreement, and the Jewelerette Agreement (collectively, the "Agreements") were binding, valid, enforceable contracts between Plaintiffs and Palacio.

79. Through its refusal to pay for the merchandise acquired pursuant to

those agreements, Palacio breached the Agreements.

80. Plaintiffs have suffered significant financial injury due to the actions of Defendants, totaling at least $1,454,228.68, plus accrued interest, costs of collection, and attorneys' fees.

WHEREFORE, the Plaintiffs demand judgment for damages against Palacio Jewelers, LLC, in the amount of $1,454,228.68 exclusive of interest and costs. The Plaintiff further demands prejudgment interest, attorneys' fees, costs and any other relief that this Court may deem just and equitable.

## **COUNT II – Account Stated**
**(brought against all Defendants in the alternative to Count I)**

81. Plaintiffs reassert and reallege paragraphs 1 through 74 as though fully set forth herein.

82. In the alternative, Plaintiff provided goods to Defendants and rendered statements for same.

83. Before this action was initiated, Plaintiffs and Defendants had business transactions between them which resulted in a balance owed to Plaintiffs.

84. Defendants agreed to the resulting balance.

85. Plaintiffs rendered a statement of the resulting balance to Defendants and Defendants did not object to the statement.

86. As of the date of the filing of this Complaint, Defendants currently owe Plaintiffs $1,454,228.68 plus accrued interest, costs of collection, and attorneys' fees.

WHEREFORE, the Plaintiffs demand judgment for damages against Defendants, Palacio Jewelers, LLC, Saker M. Shalhout, and Carolina Hussein in the amount in the amount of $1,454,228.68, exclusive of interest and costs. The Plaintiff further demands prejudgment interest, attorneys' fees, costs and any other relief that this Court may deem just and equitable

### **COUNT III – Action on Personal Guaranty**
### **(against Shalhout)**

87. Plaintiffs reassert and reallege paragraphs 1 through 74 as though fully set forth herein.

88. Shalhout in his individual capacity, signed a Guaranty, wherein he "unconditionally, absolutely and irrevocably agree[d] and undert[ook] to guaranty Palacio Jewelers' full performance of its obligations" under the Agreements between LAJ and Palacio.

89. Pursuant to the Guaranty, Shalhout agreed to "pay for the Merchandise Palacio has received."

90. Palacio has not performed its obligations under the Agreements and

Shalhout owes Plaintiffs $1,454,228.68, plus accrued interest, costs of collection, and attorneys' fees.

WHEREFORE, the Plaintiffs demand judgment for damages against Defendant, Saker M. Shalhout in the amount of $1,454,228.68, exclusive of interest and costs. The Plaintiff further demands prejudgment interest, attorneys' fees, costs and any other relief that this Court may deem just and equitable.

### COUNT IV - Civil Conspiracy
**(against all Defendants)**

91. Plaintiffs reassert and reallege paragraphs 1 through 74 as though fully set forth herein.

92. Defendants agreed and explicitly conspired to work in concert in order to deprive Plaintiffs of monies owed to them.

93. Each of the Defendants did the acts and made the specific misrepresentations alleged herein in furtherance of this scheme.

94. As a direct result of the wrongful acts committed by the Defendants and the Defendants' concerted efforts to perpetuate the scheme upon Plaintiffs, the Plaintiffs have suffered damages.

WHEREFORE, the Plaintiffs demand judgment for damages against Defendants, Palacio Jewelers, LLC, Saker M. Shalhout, and Carolina Hussein.

### COUNT V – Defamation
**(against all Defendants)**

95. Plaintiffs reassert and reallege paragraphs 1 through 74 as though fully set forth herein.

96. Defendants made the false defamatory statements against the Plaintiffs' trade, falsely accusing the Plaintiffs of having sold inauthentic gems, jewels, and merchandise.

97. Though these defamatory statements were originally made solely as a fabricated excuse for not either paying the amount outstanding under the consignment agreements or returning the merchandise, Defendants have repeated this ostentatious lie to Plaintiffs' business associates and individuals who work in in Plaintiffs' professional industry, causing harm to their business.

98. Defendants made these statements knowing them to be false.

99. Defendants have deliberately engaged in this conduct in order to assassinate Plaintiffs' character, credibility, and good will within the jewelry industry so that Defendants can avoid culpability for the fraud perpetuated.

100. As a result of those defamatory statements, Plaintiffs have suffered actual damages, though the full extent of the effect that these statements have had have not yet been fully realized.

WHEREFORE, the Plaintiffs demand judgment for damages against Defendants, Palacio Jewelers, LLC, Saker M. Shalhout, and Carolina Hussein.

## Demand for Jury Trial

The Plaintiff requests trial by jury of all matters so triable.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served upon all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on this 13th day of September, 2022.

        **KOPELOWITZ OSTROW**
        **FERGUSON WEISELBERG GILBERT**
        *Attorneys for Plaintiff*
        One West Las Olas Blvd., Suite 500
        Ft. Lauderdale, Florida 33301
        Telephone No.: (954) 525-4100
        Facsimile No.: (954) 525-4300

        By: */s/ Alexis Fields*
            ALEXIS FIELDS
            Florida Bar No.: 95953
            fields@kolawyers.com